# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                               **Case No. 05-CR-181**

**WILLIAM P. SCHMITT,**

        **Defendant.**

_____

### ORDER ON THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS AND RECOMMENDATION TO THE HONORABLE WILLIAM C. GRIESBACH

_____

On July 19, 2005, the grand jury returned a three-count indictment against the defendant, William P. Schmitt ("Schmitt"). The indictment charges that Schmitt knowingly received and possessed child pornography. Schmitt has filed several pretrial motions: a motion for a bill of particulars, an alternative motion to dismiss, two motions to suppress, and a motion for production of computer evidence. On September 30, 2005, Schmitt withdrew his motion for production of computer evidence, and, accordingly, that motion will not be discussed further in this decision. The pleadings on Schmitt's remaining motions are now closed and all motions are ready for resolution. A jury trial is scheduled to commence before the Honorable William C. Griesbach on October 17, 2005, with a final pretrial conference set for October 6, 2005. Schmitt's motions to suppress will be addressed first.

## MOTIONS TO SUPPRESS

Schmitt has filed two motions to suppress. In his first motion, Schmitt seeks suppression of the statements he made to Federal Bureau of Investigation Agent Roberto Molina ("Agent Molina") on November 9, 2004. In his second motion, Schmitt seeks suppression of evidence obtained as a result of the seizure of his computer, which also occurred on November 9, 2004. The court conducted an evidentiary to address issues raised in both of Schmitt's motions on September 16, 2005. Schmitt and Agent Molina presented somewhat contradictory testimony as to the November 9, 2004 seizure of Schmitt's computer and Schmitt's statement. A summary of their testimony follows.

### I. Agent Molina's Testimony

Agent Molina testified that his investigation of Schmitt began in March of 2004 when a Norwegian task force determined that Schmitt's computer, identified by its internet protocol address, was linked to child pornography images. (Tr. 5-6.). FBI officials subpoenaed the subscriber information for the internet protocol address and matched it with Schmitt's street address. (Tr. 20.). However, because Agent Molina still lacked information identifying Schmitt as the user of the computer and because the information supplied by the Norwegian task force was several months old by the time it was conveyed to Agent Molina, Agent Molina believed he did not have sufficient information to constitute probable cause for a search warrant or an arrest warrant. Accordingly, Agent Molina went to Schmitt's residence to conduct the knock and talk investigation, in hopes of obtaining Schmitt's consent to enter his residence and to obtain his computer. (Tr. 21-22.).

The knock and talk took place on November 9, 2004. When Schmitt answered the door, Agent Molina says that he identified himself as an FBI agent, stated that he wished to ask Schmitt some questions, and requested to enter the residence. Schmitt consented to both requests, and Agent Molina entered the residence. (Tr. 7-9, 28, 53-54.). Once inside, Agent Molina told Schmitt that he had

2

reason to believe a computer within the residence contained child pornography. Agent Molina may have conveyed this information before entering the residence, but could not be certain as to the precise moment that this comment was made. (Tr. 27-28.). Regardless, Schmitt's response to Agent Molina's statement was that his roommate was responsible for any pornography on the computer. (Tr. 9.). In addition, Schmitt stated that he had an important singing engagement with his barber shop quartet, expressed his preference no to talk to Agent Molina at that time, and requested that Agent Molina come back the following day. (Tr. 9-10, 30-33.). Agent Molina told Schmitt that their discussion was more important than a singing engagement, but did not tell Schmitt that he had to cancel his plans. (Id.). After contemplating what Agent Molina had said, Schmitt decided to continue his discussion with Agent Molina and canceled his participation in the engagement. (Tr. 10.).

Agent Molina testified that he then asked if there was a computer within the residence, and Schmitt indicated that there was. Accordingly, Agent Molina asked if Schmitt would allow him to take the computer to have it forensically examined, explaining that this would require him to remove the computer from the residence. Schmitt gave his consent, and led Agent Molina to the room where the computer was located. This conversation occurred before Agent Molina moved the computer, and Schmitt did not object to Agent Molina taking the computer at any time. (Tr. 9, 45-46, 37-38, 58, 66-67.).

Moving only the computer's central processing unit (or tower) and not the peripherals, Agent Molina transferred the computer into the kitchen. (Tr. 12, 46.). He then went to his car to get a consent form. (Tr. 12.). The form explained that Schmitt could require Agent Molina to obtain a search warrant, stated that Schmitt agreed to waive that right, authorized seizure of the computer for a forensic examination, and stated that Schmitt's consent was knowing and voluntary. (Hrg. Ex. 1.). Schmitt reviewed the consent form and asked Agent Molina what would happen if he refused to sign

3

it and, instead, required Agent Molina to get a search warrant. Agent Molina responded that he would try to get a search warrant. (Tr. 15, 43-44.). Schmitt also asked what would happen if the computer was destroyed by the time that Agent Molina came back with a search warrant. In response to that second question, Agent Molina said that destruction of the computer would be wrong. (Tr. 15.). Schmitt agreed, considered the consent form for a moment, and then signed it. (Id.).

Afterwards, Agent Molina interviewed Schmitt about the child pornography that was believed to be on Schmitt's computer. Before the interview began, Agent Molina did not administer Miranda warnings to Schmitt. The interview lasted approximately twenty to twenty-five minutes, and resulted in Schmitt stating that he was responsible for the child pornography on the computer. (Tr. 16-17.). At some point towards the end of the interview, Schmitt asked whether he would be arrested for having child pornography on his computer. (Tr. 19, 42.). Agent Molina told Schmitt that he would not be arrested at that time, left Schmitt's house, and took the central processing unit of Schmitt's computer for a forensic examination.

**II. Schmitt's Testimony**

Schmitt's testimony differs from that of Agent Molina in several respects. In regard to Agent Molina's entry into the residence, Schmitt says that Agent Molina did not ask to come into the residence and simply walked in after Schmitt agreed to answer some questions. (Tr. 54.). In addition, Schmitt says that Agent Molina did not apprise him that the investigation regarded child pornography until after Agent Molina entered the residence. (Tr. 53, 55.). In response to learning the purpose of Agent Molina's visit, Schmitt claims that he told Agent Molina that he needed to attend a singing engagement and also that he moved towards the door to escort Agent Molina out. (Tr. 56-57.). According to Schmitt, Agent Molina did not follow him towards the door, and this gave Schmitt the impression that Agent Molina was not going to leave without speaking to him. (Id.). Furthermore,

Schmitt testified that this impression caused him to cancel his participation in the singing engagement and led him to believe that he could not leave his home at that time. (Id.).

Schmitt also said that, although he did not object to what was happening (Tr. 59, 70.), Agent Molina never asked to take the computer, and Schmitt never gave his consent to have the computer removed. (Tr. 68-69.). Moreover, Schmitt contends that he did not sign the consent form until after Agent Molina interviewed him about the child pornography on his computer (Tr. 75-76.) and that Agent Molina said that he could be back within an hour with a search warrant if Schmitt refused to sign the consent form (Tr. 79.).

### III. Position of the Parties

Schmitt argues that evidence obtained from his computer should be suppressed because Agent Molina unlawfully entered his home and seized the computer without a warrant or voluntary consent. In addition, Schmitt argues that his statements to Agent Molina should be suppressed because they were obtained during custodial interrogation, without the benefit of Miranda warnings. The government opposes both of Schmitt's motions and claims that Agent Molina had consent to enter Schmitt's residence, had consent to take Schmitt's computer, and did not subject Schmitt to custodial interrogation.

### IV. Motion to Suppress Computer Evidence

Resolution of Schmitt's motion to suppress computer evidence depends, in large part, on a credibility determination. If Schmitt's account of events is credited—where Agent Molina did not seek consent to enter the residence, refused to leave when Schmitt tried to escort him out, and took Schmitt's computer without asking—Schmitt may be entitled to the relief he seeks. Conversely, the motion to suppress should be denied if Schmitt's residence was entered and Schmitt's computer was seized under the circumstances described by Agent Molina. After reviewing the parties' submissions

5

and in light of the testimony presented at the evidentiary hearing, the court finds Agent Molina's testimony to be more credible than Schmitt's. Agent Molina's entry into the residence will be discussed first.

**1. Consent to Enter the Residence**

Agent Molina's testimony regarding his entry into Schmitt's residence is more credible than Schmitt's testimony for several reasons. First, Agent Molina would have asked to enter Schmitt's residence early in the knock and talk investigation. At that point, Agent Molina did not know who Schmitt was or whether the computer he suspected to contain child pornography remained at the residence. Similarly, Schmitt may not even have been told that Agent Molina was there to investigate child pornography and would have had, at best, only a speculative basis to believe that Agent Molina's entry would result in criminal liability. Under those circumstances, the court finds it more reasonable that Agent Molina would obtain Schmitt's consent, rather than jeopardize the investigation at a time when Schmitt would have relatively little incentive to decline entry. In addition, Agent Molina repeatedly testified that he tried to proceed in a respectful manner so that Schmitt would be more likely to comply with his requests. Schmitt agreed that Agent Molina acted respectfully towards him, and seeking consent to enter the residence comports with that approach. Consent is also consistent with Schmitt's testimony that he expected Agent Molina to enter the residence and had no problem with his entry. (Tr. 65.).

Many of these considerations also lead the court to conclude that Schmitt's consent was voluntary. "The question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 227 (1973). The court considers a number of factors when determining whether a consent to search was voluntary: "age, education, and

6

Case 1:05-cr-00181-JPS   Filed 10/03/05   Page 6 of 16   Document 33-2

intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; and whether he was in custody." United States v. Kozinski, 16 F.3d 795, 810 (7th Cir.1994); see also Schneckloth, 412 U.S. at 226. A determination of voluntariness does not ride on "the presence or absence of a single controlling factor," but rather the court must make a "careful scrutiny of all the surrounding circumstances." Schneckloth, 412 U.S. at 226.

Because there is no evidence of coercion in connection with Agent Molina's entry into Schmitt's residence, consent was given at a time when Schmitt would have little reason to believe he risked criminal liability, and Schmitt testified that he had no objection to Agent Molina's entry, the court concludes that Schmitt's consent in permitting Molina to enter was knowing and voluntary. The court further finds that Schmitt did not withdraw his consent when he indicated that he wanted to go to a singing engagement rather than speak with Agent Molina. At that point, it became apparent that Schmitt would have preferred to have Molina terminate his investigation---Schmitt indicated that he had to leave for a singing engagement, asked Agent Molina to come back at another time, and, according to Schmitt, moved to escort Agent Molina out of the residence. However, awareness that Schmitt was upset and initially wanted to discontinue the investigation does not preclude Agent Molina from emphasizing the importance of their discussion and asking Schmitt to reconsider his plans. Most persons would prefer that police not enter their home and many become upset at the possibility of their home and belongings being searched. This does not lead to the conclusion that consent to Agent Molina's entry was invalidated. United States v. Marin, 761 F.2d 426, 434 (7th Cir. 1985)(consent is not overcome by the fact that the may have been upset); United States v. Stone, 471 F.2d 170, 173 (7th Cir. 1973)("[t]o hold that the mere condition of being 'upset' by the presence at

one's home of FBI agents is enough to make any consent the product of coercion might effectively foreclose almost all searches conducted pursuant to a voluntary consent.").

Here, the parties agree that Agent Molina never told Schmitt that he would not leave without questioning him, never said that Schmitt must turn over his computer, and never told Schmitt that he must cancel his singing engagement. (Tr. 9-10.). Schmitt was upset about canceling his performance but does not dispute that he did so on his own free will. Accordingly, the parties' disagreement in regard to whether Schmitt moved to escort Agent Molina towards the door is inconsequential, Agent Molina had Schmitt's knowing and voluntary consent to be in the residence, and the court will turn its attention to whether Agent Molina obtained valid consent to take Schmitt's computer.

**2. Consent to Seize and Search Schmitt's Computer**

Resolution of whether Agent Molina had valid consent to seize Schmitt's computer again depends on a credibility determination. In that regard, the court finds it more plausible that Agent Molina would obtain Schmitt's consent to take the computer rather than the scenario presented by Schmitt, where Agent Molina unplugs the computer and moves it to the kitchen without permission. Agent Molina is an experienced law enforcement agent, who testified that he was attentive to the boundaries of the Fourth Amendment and the most effective method of building rapport and obtaining consent when conversing with Schmitt. To explain his certainty in obtaining Schmitt's consent before moving the computer, Agent Molina testified as follows:

> Q: And I understand you have a recollection of the events, but is there some reason why it's impossible [that the computer was moved without consent]?
>
> A: Because I would have never gone in and taken the computer before you get consent. And then to ask for consent afterwards, it would be ludicrous to do that. I mean, because you would ruin any rapport that you had with the individual to try to get him to let you voluntarily take the computer. You would ruin if you went in and grabbed it and moved it and then asked for permission. That would be - - it could not happen.

(Tr. 38.). Schmitt offered no such articulated explanation as to why Agent Molina would simply remove his computer from one room and take it to another without asking. In addition, obtaining consent to take the computer is consistent with the undisputed testimony that Schmitt took Agent Molina to the room where the computer was kept and volunteered that the computer was the one that Agent Molina suspected to contain child pornography. Consent also accords with the fact that Schmitt failed to either explicitly or implicitly indicate that Molina should leave the computer alone and not take the computer for further examination. Furthermore, obtaining verbal consent to take the computer is also consistent with the fact that Agent Molina took the time to explain to Schmitt what a forensic examination would entail.

Finally, because Schmitt understood the purpose of a search warrant when Agent Molina initially obtained oral consent to seize the computer (Tr. 72.), and there is no indication of coercion at that time, Schmitt's oral consent was also knowing and voluntary. Indeed, the parties do not dispute that Schmitt understood the consequences of his actions. Rather, Schmitt's contention is that he felt that he had no choice but to allow Agent Molina to take the computer based on the consensual entry and seizure. For reasons discussed, that scenario is not persuasive.

The court's determination that Schmitt's oral consent was knowing and voluntary is important because it is sufficient to preclude suppression of the computer evidence. The fact that Agent Molina also obtained Schmitt's written consent (either before or after the interview) only memorializes Schmitt's verbal agreement. The effort that Agent Molina made to memorialize Schmitt's consent in the first place also substantiates the court's determination that Agent Molina was not willing to shortcut consent to obtain the incriminating evidence he sought.

9

Moreover, the parties agree that Schmitt's written consent was obtained while the computer was still in Schmitt's kitchen. Schmitt testified that he knew Agent Molina did not find any evidence of child pornography from the computer at that point. (Tr. 67-68, 73, 77-78.). Thus, even if Agent Molina had not obtained valid oral consent to take the computer, suppression is not appropriate under these facts because Schmitt gave written consent to a forensic examination before incriminating evidence was obtained, and did so while being fully apprised of the consequences of his actions.

In fact, the court is warranted in concluding that Schmitt's consent was knowing and voluntary based on the written consent form alone. Schmitt testified that he read the consent form and fully understood the advice of rights contained therein. Specifically, Schmitt understood search warrants, knew that he had a right not to have a search of the computer without a warrant and knew that he had a right to refuse consent to a search of his computer. Schmitt contemplated his rights as evidenced by the fact that he asked Agent Molina what would happen if he refused to sign the form and required Agent Molina to come back with a search warrant. While Schmitt claims that Agent Molina said he would return with a search warrant within the hour, that statement of certainty in obtaining a warrant contradicts Agent Molina's testimony that he was careful to tell Schmitt that he would <u>try</u> to obtain a warrant. Schmitt's statement is also inconsistent with his later testimony that he asked Agent Molina what would happen if Agent Molina came back with a warrant the next day and the computer was gone. (Tr. 79.). Accordingly, it is this court's opinion that Agent Molina's entry and seizure were based on Schmitt's knowing and voluntary consent and, the court will recommend that Schmitt's motion to suppress seizure of the computer and any evidence derived therefrom be denied.

### V. Motion to Suppress Statements

In his second motion, Schmitt argues that the statement he gave to Agent Molina should be suppressed because Agent Molina did not administer <u>Miranda</u> warnings prior to the interview.

10

Miranda warnings are required when an accused is both "in custody" and subject to "interrogation." United States v. Saadeh, 61 F.3d 510, 519 (7th Cir. 1995); United States v. Salyers, 160 F.3d 1152, 1159 (7th Cir. 1998). The parties in the present case agree that Agent Molina interrogated Schmitt, and the only dispute is whether Schmitt was in custody at he time of the interview.

A suspect is "in custody" for Miranda purposes if he is formally arrested or is subject to a restraint on freedom of movement associated with a formal arrest. United States v. Lennick, 917 F.2d 974, 977 (7th Cir. 1990); United States v. Wyatt, 179 F.2d 532, 535 (7th Cir. 1999)(citing United States v. James, 113 F.3d 721 (7th Cir. 1997)). In evaluating the in custody requirement, courts employ an objective analysis and review the totality of the circumstances. United States v. Fazio, 914 F.2d 950, 954 (7th Cir.1990); Wyatt, 179 F.3d at 535. Factors that may be significant in determining whether suspect is "in custody" include whether and to what extent the suspect has been made aware that he is free to refrain from answering questions; whether there has been prolonged, coercive, and accusatory questioning; whether police have employed subterfuge to induce self-incrimination; the degree of police control over environment in which interrogation takes place; whether suspect's freedom of movement is physically restrained or otherwise significantly curtailed; and whether suspect could reasonably believe that he has right to interrupt prolonged questioning by leaving scene. Sprosty v. Buchler, 79 F.3d 635, 641 (7th Cir. 1996)(internal citations omitted). Ultimately, the court's focus in regard to custodial interrogation is coercion. United States v. Martin, 63 F.3d 1422, 1430 (7th Cir. 1995).

Two of the Sprosty considerations weigh in favor of the conclusion that Schmitt was in custody: Agent Molina did not tell Schmitt that he was free to leave or decline to answer his questions, and Agent Molina accused Schmitt of being responsible for the child pornography. However, these two considerations are substantially outweighed by a great number of considerations

11

which demonstrate that Schmitt was not "in custody" when he accepted responsibility for the child pornography on his computer. For example, Agent Molina was the only agent at Schmitt's residence, was dressed in plain clothes, kept his firearm hidden, did not physically restrain Schmitt, and interviewed Schmitt at his home, rather than at FBI headquarters or similar location that would allow Agent Molina to have substantial control. There is no indication that Agent Molina questioned Schmitt in a hostile or coercive manner or that Agent Molina used deception to induce Schmitt's statement, or that Agent Molina prolonged the interview. In fact, in comparison to many interrogations, Agent Molina's interview of Schmitt was relatively short, lasting approximately twenty to twenty-five minutes only. Moreover, while Agent Molina emphasized the importance of Schmitt talking to him that evening, it was ultimately Schmitt's decision to cancel his singing performance and remain at the residence. Agent Molina never told Schmitt that he must cancel his singing engagement, had to give him the computer, or must answer his questions. Schmitt was, at all times, free to decline Agent Molina's suggestions and require Agent Molina to leave. Schmitt clearly considered his rights and knew he had options. This is evidenced by the fact that Schmitt asked Agent Molina what would happen if he required him to leave and get a search warrant and that Schmitt later asked what would happen if the computer was destroyed by the time Agent Molina returned. Molina responded that Schmitt would not want to do that, i.e. meaning destroying evidence after the agent left. A person in custody does not have these options; the arresting officer is not going to leave. Furthermore, the fact that Schmitt asked Agent Molina whether he was going to be arrested towards the end of the interview indicates that Schmitt did not feel he was previously under arrest.

Under these circumstances a reasonable person in Schmitt's position would believe that he was free to leave and not speak with the officers. Thus, Schmitt was never subjected to custodial interrogation, and the court will recommend that Schmitt's second motion to suppress also be denied.

12

## MOTION FOR BILL OF PARTICULARS and ALTERNATE MOTION TO DISMISS

In addition to his motions to suppress, Schmitt also filed a motion for a bill of particulars and an alternate motion to dismiss the indictment. Schmitt's motion for a bill of particulars requests that the government confirm that counts one through three of the indictment are based on the definition of child pornography contained in 18 U.S.C. § 2256(8)(A) and not the definition contained in § 2256(8)(B) or (C). Confirmation of the particular subsection upon which the government plans to proceed is important to Schmitt because the definition of child pornography under § 2256(8)(A) requires the government to prove that an actual minor was used to create the sexually explicit images. As part of his defense, Schmitt plans to claim that no minors were used to create the images found on his computer and that the government has not met its burden of proof in that regard. Sections 2256(8)(B) and (C) are violated even if a minor is not used, so long as the visual depiction is indistinguishable from a minor engaging in sexually explicit conduct or the visual depiction was modified to appear that an identifiable minor is engaged in sexually explicit conduct. Thus, if the government is relying on those sections, Schmitt's claim that an actual minor was not used is of no significance.

Schmitt's motion also requests notice as to whether the government is asserting that the affirmative defense provisions of 18 U.S.C. § 2252A(c) apply in this case. Under § 2252A(c), it is an affirmative defense if the depicted persons are not actual minors. Schmitt claims that § 2252A should not apply because the government has charged § 2256(8)(A) which delegates the burden of proof that an actual child was used to the government, as an element of the charged offense.

Thus, if the government is relying on the definition of child pornography contained in § 2256(8)(B) or (C), <u>or</u> is asserting that the affirmative defense of § 2252A(c) applies, then Schmitt argues that the indictment should be dismissed. As grounds, Schmitt contends that § 2252A and §

13

2256 are overly broad, in violation of the First Amendment and that § 2252A impermissibly relieves the government of its burden to prove each element of the offense.

In response to Schmitt's motion, the government states that it is relying exclusively on the definition of child pornography contained in § 2256(8)(A), that it will prove use of an actual minor, that the affirmative defense of § 2252A does not apply, and that the court need not reach the constitutional issues raised in Schmitt's motion to dismiss. In light of this disclosure, Schmitt concedes that his motions are now moot. (Schmitt Reply Ltr. at 1.).

The court agrees. The arguments set forth in Schmitt's motion to dismiss are not applicable because the government is not relying on the sections upon which that motion are premised. Moreover, in determining whether an indictment is sufficient, the court considers whether the indictment (1) states each element of the alleged offense; (2) provides the defendant with information adequate for the preparation of his defense; and (3) provides a sufficient basis for a judgment that would bar any subsequent prosecution for the same offense. United States v. Hausmann, 345 F.3d 952, 955 (7th Cir. 2003)(citing FED. R. CR. P. 7)). Rule 7(f) of the Federal Rules of Criminal Procedure allows for a bill of particulars, that is, a more specific expression of the illegal activities a defendant is accused of having engaged in. United States v. Canino, 949 F.2d 928, 948 (7th Cir.2001). Whether a bill of particulars is required depends on whether the indictment sufficiently apprises the defendant of the charge to enable him to prepare for trial. Canino, 949 F.2d at 948. Ultimately, the test for validity of an indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. Hausmann, 345 F.3d at 955 (citing United States v. Allender, 62 F.3d 909, 914 (7th Cir.1995)).

14

The present indictment fulfills all of these requirements---it states that Schmitt is charged with violating §§ 2252A(a)(2)(A) and 2256(8)(A), tracks the statutory language of those sections, and does not mention the definition of child pornography contained in § 2256(8)(B) or (C). Thus, from the face of the indictment alone, it is abundantly clear that the government must prove use of an actual child. Schmitt's concerns that the government might rely on a definition of child pornography that does not involve use of an actual child or that he might need to rely on the affirmative defense of § 2252A(c) has no basis in the indictment. Accordingly, even if the disclosures volunteered in the government's response did not render Schmitt's motion moot, the court would still deny the motion for a bill of particulars and recommend that the motion to dismiss be denied.

For all the reasons discussed, the court now enters the following order and recommendation on Schmitt's pretrial motions:

**IT IS THEREFORE RECOMMENDED** that Schmitt's motion to suppress seizure of the computer and evidence derived therefrom be **denied.**

**IT IS FURTHER RECOMMENDED** that Schmitt's motion to suppress the statement made to Agent Molina be **denied.**

**IT IS FURTHER RECOMMENDED** Schmitt's alternative motion to dismiss be **denied.**

**IT IS THEREFORE ORDERED** that Schmitt's motion for a bill of particulars is **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. In this case, any objections shall be filed prior to the final pretrial conference scheduled for October 6, 2005. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the

district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 3RD day of October, 2005.

s/AARON E. GOODSTEIN<br>
United States Magistrate Judge